**176**     **552 FEDERAL REPORTER, 2d SERIES**

power of courts to fashion new common law.[6] We hold that it was not. Although courts ought not to be discouraged from creating innovative legal remedies to meet changing social conditions, they may not use the power to create new decisional law to order extreme and irreversible remedies such as sterilization in situations where the legislative branch of government has indicated that they are inappropriate. If we were to say that jurisdiction existed to order sterilization without adherence to the requirements of institutionalization and procedural due process mandated by the Indiana legislature, we would be sanctioning tyranny from the bench. There are actions of purported judicial character that a judge, even when exercising general jurisdiction, is not empowered to take.[7]

[9] Even if defendant Stump had not been foreclosed under the Indiana statutory scheme from fashioning a new common law remedy in this case, we would still find his action to be an illegitimate exercise of his common law power because of his failure to comply with elementary principles of procedural due process. Here a juvenile was ordered sterilized without the taking of the slightest steps to ensure that her rights were protected. Not only was the plaintiff not given representation, she was not even told what was happening to her. She was afforded no opportunity to contest the validity of her mother's allegations or to have a higher court examine whether the substance of those allegations, even if true, warranted her sterilization. Finally, the petition and order were never filed in court. This kind of purported justice does not fall within the categories of cases at law or in equity.

Thus, Judge Stump's action had no basis either in law or in equity and was therefore taken without jurisdiction. In the absence of jurisdiction, a judge is not entitled to judicial immunity in a suit for damages that resulted from his action.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.



MARRIOTT CORPORATION,
Plaintiff-Appellee,

v.

GREAT AMERICA SERVICE TRADES COUNCIL, AFL–CIO,
Defendant-Appellant.

No. 76–1453.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1976.

Decided March 24, 1977.

Suit brought by employer alleging that labor organization council's use of certain words violated the Lanham Act and Illinois common law of unfair competition was removed to the district court. The United States District Court for the Northern District of Illinois, Eastern Division, Alfred Y. Kirkland, J., issued preliminary injunction restraining use of words in order to preserve status quo, and employer appealed. The Court of Appeals, Swygert, Circuit Judge, held that fundamental basis of controversy was a labor dispute within meaning of the Norris-LaGuardia Act, and that where jurisdiction of the district court had been invoked for violation of the Lanham

---

6. This claim was never asserted in defendants' briefs or at oral argument.

7. There are other examples of extreme and unauthorized remedies not distinguishable from the present case. If Judge Stump were said to be acting validly under the power of courts to create new common law, a judge of general jurisdiction could order, upon an affidavit and petition similar to the one in the instant case, that a United States citizen should be disenfranchised because he is "un-American." Clearly such a remedy would be beyond the judge's general jurisdiction.

MARRIOTT CORP. v. GREAT AMERICA SERV. TRADES COUNCIL 177
Cite as 552 F.2d 176 (1977)

Act, fact that conduct was involved which might tangentially be covered by Labor Management Relations Act was not sufficient to preempt jurisdiction of the district court over employer's trademark action.

Order granting preliminary injunction reversed and cause remanded.

1. Labor Relations ⚖︎889

Where employer's suit alleging that labor organization council's use of certain words violated the Lanham Act would have great impact on interests of council, its members and potential members, request for injunctive relief was directed against choice of name that was intertwined with organizational efforts to achieve representation of employer's workers, and employer's quick response to council's newspaper advertisement indicated employer's concern with ultimate success of council in organizing, controversy concerned association or representation of employees and prospective employees with respect to conditions of employment and thus constituted "labor dispute" that deprived district court of jurisdiction to issue preliminary injunction. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.; Norris-LaGuardia Act, §§ 1, 13(c), 29 U.S.C.A. §§ 101, 113(c).

See publication Words and Phrases for other judicial constructions and definitions.

2. Labor Relations ⚖︎81

Aims of labor organization in choosing name which serves to identify and publicize employer that is target of campaign and to instill measure of collective identity among employees to facilitate organizational drive to represent employees of particular employer are legitimate union objectives in seeking right to self-organization of employees. National Labor Relations Act, § 7 as amended 29 U.S.C.A. § 157.

3. Labor Relations ⚖︎881

Labor dispute may exist within controversy that is touched by other areas of federal law.

4. Labor Relations ⚖︎510

Where independent federal statutory scheme is involved, jurisdiction of federal court is not preempted by the Labor Management Relations Act. National Labor Relations Act, § 1 et seq. as amended 29 U.S.C.A. § 151 et seq.

5. Labor Relations ⚖︎510

Where jurisdiction of the district court had been invoked by employer for violation of the Lanham Act, fact that conduct was involved which might tangentially be covered under the Labor Management Relations Act was not sufficient to preempt jurisdiction of district court over employer's trademark action in favor of the National Labor Relations Board. Lanham Trade-Mark Act, § 1 et seq., 15 U.S.C.A. § 1051 et seq.; National Labor Relations Act, §§ 7, 8 as amended 29 U.S.C.A. §§ 157, 158.

---

Solomon I. Hirsh, Stephen B. Horwitz, Rosemont, Ill., for defendant-appellant.

Daniel W. Vittum, Jr., Chicago, Ill., Ivan H. Rich, Jr., Washington, D. C., for plaintiff-appellee.

Before MOORE, Senior Circuit Judge,[1] and SWYGERT and TONE, Circuit Judges.

SWYGERT, Circuit Judge.

The principal issue in this appeal is whether the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., bars the issuance of a preliminary injunction in a case in which the employer is purportedly merely asserting a claim that a combination of trade union locals in an organizational effort has infringed the employer's federally registered service mark. We hold that a "labor dispute" as defined by the Act is involved within the controversy between the parties and that the preliminary injunction must be vacated.

---

1. The Honorable Leonard P. Moore, United States Senior Circuit Judge for the Second Circuit, is sitting by designation.

Plaintiff-appellee Marriott Corporation was constructing an amusement park in Gurnee, Illinois, scheduled to open at the end of May 1976. This park and a similar one opened by Marriott in California were promoted as "Marriott's Great America," a service mark registered by Marriott. In early February 1976 five labor organizations joined for the purpose of organizing the 1500 employees anticipated to be hired by Marriott.[2] The group adopted the name, "Great America Service Trades Council, AFL–CIO" and printed authorization cards to distribute among employees and prospective employees of the Great America park.

On February 26, 1976 the Council ran an advertisement in a local newspaper addressed to "Applicants for Positions with Marriott's Great America."[3] This advertisement urged applicants to report to the Council to sign union authorization for representation cards. The same day Marriott mailed a letter to employees and applicants in response to the advertisement.[4] This letter stated that the Council was in no way affiliated with "Marriott's Great America," and went on to urge the recipients to have nothing to do with the Council.

On February 27 Marriott filed suit against the Council in the Circuit Court of Lake County, Illinois, Marriott alleged that the Council's use of the words "Great America" in its name violated the Federal Trademark Act (Lanham Act), 15 U.S.C. § 1051 et seq., and Illinois common law of unfair competition. It also alleged violations of the Illinois Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. Ch. 121½, § 312, and Ill.Rev.Stat. Ch. 140, § 22. The latter claims were based on charges that the Council's use of "Great America" created a likelihood of confusion that the Council was affiliated with Marriott and that this conduct caused "serious injury to Marriott's business and reputation."

The state court entered a temporary restraining order which enjoined the Council from, among other things, "using" or "diluting" the marks "Great America" and "Marriott's Great America" in connection with any service it offered. On March 1, 1976 the Council removed the case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1441. Subsequent to the removal Marriott asked for a preliminary injunction, and after a hearing, the district court issued the injunction, restraining the Council's use of the words "Great America,"[5] in order to preserve the status quo.

---

2. The five unions are: Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO; Hotel and Restaurant Employees and Bartenders Union, AFL–CIO; International Alliance of Theatrical and State Employees International Union, AFL–CIO; Retail Clerks International Association, AFL–CIO; and Service Employees International Union, AFL–CIO.

3. The advertisement stated the following:
   IMPORTANT NOTICE
   To All Applicants for Positions
   With Marriott's Great America
   If you have applied, or intend to apply for employment at the above firm, please report to the Great America Service Trades Council, AFL–CIO, for the purposes of signing your Authorization for Representation Card.
   If you cannot come in immediately, you should contact us by telephone to set up an appointment.
           Please note new office address:
           GREAT AMERICA SERVICE
               TRADES COUNCIL,
                  AFL–CIO

   The balance of the advertisement listed the new office address, telephone number, and office hours.

4. The letter read in part:
   Please be assured that this so-called council has absolutely no connection or affiliation with Marriott's GREAT AMERICA.® More importantly, they can do ABSOLUTELY NOTHING to benefit GREAT AMERICA®'s job seekers or employees.
   Don't be duped by this underhanded scheme, and please be certain that any friends or neighbors who have applied with us know this so-called council has no connection or affiliation with Marriott's GREAT AMERICA®. I also urge you to have nothing to do with this organization, and to sign NOTHING obtained from it. All applicants and employees should continue to deal directly with the Marriott's GREAT AMERICA® employment office.

5. The injunction reads in pertinent part:
   It Is Hereby Ordered and Decreed that Defendant, Great America Service Trades Council, AFL–CIO, its officers, directors, mem-

The Council contends that the district court was prohibited by the Norris-LaGuardia Act from enjoining the use of the "Great America" appellation. It also contends that the case is controlled by the Labor Management Relations Act (LMRA), 29 U.S.C. § 151 et seq., the National Labor Relations Board (NLRB) having exclusive jurisdiction over the case, and that, substantively, there was no infringement of Marriott's servicemark.

I

[1] The Norris-LaGuardia Act [6] operates to deprive a court of the United States of jurisdiction to issue injunctions in cases "involving or growing out of a labor dispute." Thus, the critical question becomes whether or not a "labor dispute" exists within the meaning of the Act. Section 13(c) of the Act, 29 U.S.C. § 113(c), defines labor disputes to include "any controversy . . . concerning the association or representation of persons in negotiating, fixing . . . or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The controversy in the instant case, although couched in terms of trademark infringement by Marriott, does, in fact, concern the "association or representation" of its employees and prospective employees with respect to "conditions of employment." *American Federation of Musicians v. Carroll*, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968), is instructive. There injunctive relief was sought against a musicians' union for alleged antitrust violations. The Supreme Court said that it is necessary to inquire beyond the form or appearance of a dispute to its "relative impact on . . . the interests of union members." 391 U.S. at 107, 88 S.Ct. at 1568. The challenged conduct included promulgation and enforcement by the unions upon orchestra leaders of regulations and minimum price lists. The Court found that it involved a labor dispute, and was, thus, covered by the Norris-LaGuardia Act. The instant case is analogous. Marriott sought injunctive relief against use by the Council of the "Great America" name in its organizational efforts. It invokes this relief for the alleged violation of a separate federal statutory scheme, in the instant case, the Lanham Act. Following the Supreme Court's directive to look beyond the form of this complaint, it can readily be perceived that, whatever the merits of plaintiff's Lanham Act and other trademark claims, this dispute has a great impact on the interests of the unions, their members, and potential members.

[2] The organizational efforts of the unions to achieve representation of Marriott's workers are the foundation of this dispute. The request for injunctive relief was directed against the Council's choice of name, which is intertwined with those efforts, legitimate labor objectives. The choice of a particular name by a labor organization may very well facilitate its organizational drive to represent the employees of a particular employer. The name may serve to identify and publicize the employer which is

---

bers, agents, representatives . . . hereby are, enjoined and restrained during the pendency of this action from:

(1) using Plaintiff's service marks "GREAT AMERICA" or "MARRIOTT'S GREAT AMERICA" or any colorable imitations thereof or anything confusingly similar thereto as a part of or in association with Defendant's name;

(2) representing by use of the terms "GREAT AMERICA" or "MARRIOTT'S GREAT AMERICA" or by any other means or method that it is authorized or sponsored by, affiliated with or related to Plaintiff, or otherwise taking any action likely to cause mistake, deception, or confusion between Plaintiff and Defendant.

6. 29 U.S.C. § 101 provides:

*Issuance of restraining orders and injunctions; limitation; public policy*

No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter, nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.


the target of the campaign and to instill a measure of collective identity among employees. Such aims are legitimate union objectives in seeking the right to self-organization of employees under section 7 of the Labor Management Relations Act.

The quick response of Marriott to the Council's newspaper advertisement further demonstrates that the fundamental basis of the controversy is truly a labor dispute. In a letter dated the same day as the Council's advertisement, Marriott informed employees and applicants that the Council was not affiliated with Marriott. Marriott also told the employees and applicants that the Council could do "absolutely nothing" to benefit them, and further urged them to "have nothing to do with" the Council. This response to the unions' organizational drive indicates a primary concern on the part of Marriott with not only the methods used by the Council in organizing, but also its ultimate success in organizing. Although Marriott may believe that it is being injured by a trademark infringement, its concern about the Council's methods and success serves to identify the controversy primarily as a labor dispute.

[3] A labor dispute, as here, may exist within a controversy that is touched by other areas of federal law. *Milkwagon Drivers' Union v. Lake Valley*, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63 (1940); *United States v. Hutcheson*, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941); *Carroll, supra* (antitrust). Since we have decided that the Norris-LaGuardia Act deprived the district court of jurisdiction to issue the preliminary injunction, there is no need at this time to discuss at length the trademark issue. That issue can await a full evidentiary hearing. It must be noted, however, that the evidence submitted by Marriott demonstrated at most a possible confusion as to "affiliation" or "relationship" between it and the unions and not as to source of products or services. Likewise, it must be noted that if the newspaper advertisement published by the Council contained deceptive representation and inference, as argued by Marriott, that conduct might be the basis of unfair labor charges under the LMRA.

II

[4, 5] We, thus, reach the Council's second contention that this case comes under the exclusive jurisdiction of the National Labor Relations Board and therefore the complaint must be dismissed. The Council argues that its conduct was arguably either protected by section 7 of the Labor Management Relations Act as an integral part of its organizational drive, or prohibited by section 8 as an unfair labor practice on the Council's part. Whether or not the conduct falls into one of these categories, the NLRB does not have exclusive jurisdiction in this case. The jurisdiction of the district court has here been invoked by the plaintiff for a violation of the Lanham Act. Where an independent federal statutory scheme is involved, the jurisdiction of the federal courts is not pre-empted by the LMRA "[The] pre-emption doctrine . . . has never been rigidly applied to cases where it could not fairly be inferred that Congress intended exclusive jurisdiction to lie with the NLRB." *Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967). Further, the Supreme Court has held that "the federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies." *Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975). In *Connell* the independent federal remedy arose under federal antitrust laws; in the instant case the independent remedy invoked lies in the federal trademark law. We cannot fairly infer that Congress intended the NLRB to have exclusive jurisdiction over an action for trademark infringement under the Lanham Act. To state the proposition demonstrates its incongruity. Regardless of the merits of plaintiff's trademark claim, it should not be relegated to the NLRB, an agency, specialized in the field of federal labor law, to litigate a claim completely outside of the Board's area of expertise. The fact that

conduct is involved which may tangentially be covered by section 7 or 8 of the Labor Management Relations Act is not sufficient to pre-empt jurisdiction over Marriott's trademark action. *Connell, supra.*

The order granting the preliminary injunction is reversed and the cause is remanded for further proceedings consistent with this opinion.



UNITED STATES of America, Plaintiff-Appellee,

v.

Efrain MEDINA a/k/a Frank Medina, Defendant-Appellant.

No. 76–1233.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1977.

Decided March 24, 1977.

Defendant was convicted in the United States District Court for the Northern District of Illinois, Eastern Division, William J. Lynch, J., of robbing a credit union, and he appealed. The Court of Appeals, Harlington Wood, Jr., Circuit Judge, held, inter alia, that the trial court adequately ruled on the voluntariness of defendant's confession; that such confession was properly held to be voluntary; that an in-court identification of defendant was not tainted by pretrial identification procedures; and that only harmless error occurred when the trial court refused to send one of defendant's exhibits to the jury room.

Affirmed.

Swygert, Circuit Judge, dissented and filed opinion.

1. Criminal Law ⚖ 532

While it would have been better practice for trial judge to state that he had found by preponderance of evidence that defendant's confession was voluntary, and to give reasons for so concluding, trial judge nevertheless adequately fulfilled his responsibilities with regard to ruling on confession's voluntariness when he first took such issue under advisement and then admitted confession into evidence.

2. Criminal Law ⚖ 531(3)

Confession of robbery suspect was properly held to be voluntary despite suspect's contentions that, inter alia, he was physically abused during interrogation, that he was refused methadone despite fact that he was on methadone maintenance program and undergoing drug withdrawal, that he was not informed of his right to have an attorney, and that he was questioned intermittently for period of some 22 hours.

3. Criminal Law ⚖ 339.8(3, 4)

Pretrial identification procedures employed on robbery suspect were not unduly suggestive despite suspect's contention that robbery victim was not allowed to view all four members of lineup simultaneously, that members of lineup were largely dissimilar, that suspect wore same clothes in lineup as robber wore at time of commission of crime, and that victim was told by police that robber was in lineup; in any case, identification of suspect was sufficiently reliable to avoid due process violation. 18 U.S.C.A. §§ 2113, 2113(a, d).

4. Criminal Law ⚖ 858(3), 1174(6)

Although trial court in robbery prosecution abused its discretion in permitting all government exhibits to be taken into jury room while barring jury from receiving one of defendant's exhibits, such error was harmless in view of other evidence of defendant's guilt. Fed.Rules Crim.Proc. rule 52(a), 18 U.S.C.A.

---

Giles A. Franklin, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., Robert T. McAllister, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.