IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANHEUSER-BUSCH, INC., | : | |
| Plaintiff, | : | Case No. 3:11-cv-262 |
| | : | |
| vs. | : | JUDGE WALTER HERBERT RICE |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS and TEAMSTERS LOCAL UNION 957 | : | |
| | : | |
| Defendants | : | |

DECISION AND ENTRY OVERRULING PLAINTIFF'S APPLICATION FOR: (1) TEMPORARY RESTRAINING ORDER; AND (2) ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE (DOC. #5), NUNC PRO TUNC JULY 29, 2011; TERMINATION ENTRY

Plaintiff, Anheuser-Busch, Inc., filed suit against International Brotherhood of Teamsters, and Teamsters Local Union 957, alleging trademark dilution and false advertising in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; deceptive trade practices in violation of Ohio Revised Code § 4165.01, *et seq.*; and defamation. Doc. #1. Plaintiff also filed an Application for: (1) a Temporary Restraining Order; and (2) Order to Show Cause Why Preliminary Injunction Should Not Issue. Doc. #5. The Court held a hearing on that Application on July 29, 2011. For the reasons set forth below, Plaintiff's Application is overruled.[1]

_____

[1] Although this case was voluntarily dismissed by Plaintiff on August 2, 2011, this Court feels, in fairness to all parties, that same deserve a written

I.      **Background and Procedural History**

Heidelberg Distributing Company ("Heidelberg") is a beverage distributor in southwestern Ohio.  It distributes numerous products, including many Anheuser-Busch products.  Its drivers and warehouse workers are represented by the International Brotherhood of Teamsters, and Teamsters Local Union 957 (collectively "the Teamsters").  Heidelberg is currently involved in a contract labor dispute with the Teamsters.  The Teamsters object to Heidelberg's efforts to abandon its obligation to provide health benefits to retirees, and its efforts to force employees to accept a substandard contract.  Ex. D to Verified Compl.  Anheuser-Busch does not own or control Heidelberg, is not involved in the labor dispute, and has no control over Heidelberg's labor relations policy.  Verified Compl. ¶¶ 26-30.

On July 22, 2011, the Teamsters caused advertisements to be displayed on two digital billboards along Interstate 75 in the Dayton area.  The advertisements read: "Tell Budweiser Heidelberg's Destruction of Ohio Jobs is Tasteless."  Smaller print at the bottom of the billboard states: "Paid for by the International Brother-hood of Teamsters to address an ongoing labor dispute with Heidelberg Distributing Company."  The words "Budweiser" and "is Tasteless" appear in a larger font than the other words and, although most of the letters on the billboard are black, these three words appear in red.  The word "Budweiser" is in a red script similar to

_____

decision on Plaintiff's Motion for a Temporary Restraining Order, given that Plaintiff invoked the jurisdiction of this Court with the filing of the captioned cause, seeking temporary injunctive relief.

2

Budweiser's trademark. A picture of broken glass (presumably a broken beer bottle) adorns the top corner of the billboard. Exs. C1 and C2 to O'Connor Decl.

On July 27, 2011, Plaintiff filed a Verified Complaint against the Teamsters, Doc. #1. The Complaint contains four claims for relief: (1) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (2) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) defamation; and (4) deceptive trade practices in violation of Ohio Revised Code § 4165.01.

Plaintiff alleges that the billboards communicate the false message that Anheuser-Busch is responsible for the labor dispute between Heidelberg and the Teamsters, and is responsible for the destruction of Ohio jobs. Plaintiff also maintains that the broken glass depicted on the billboards implies that Budweiser products could be unsafe or harmful to consumers. According to Plaintiff, the false and misleading statements on the billboards constitute an attempt to divert sales of Budweiser products to other manufacturers. Plaintiffs seek preliminary and permanent injunctive relief, treble and punitive damages, costs and attorney fees.

Along with the Verified Complaint, Plaintiff filed an Application for a Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue. Doc. #5. On July 29, 2011, Defendants filed Memoranda in Opposition to Plaintiff's Request For Injunctive Relief. Docs. ## 8, 9. Defendants argue that the anti-injunction provision of the Norris -LaGuardia Act prohibits the Court from granting the relief requested.

The Court held a hearing on Plaintiff's Application on July 29, 2011, and issued an oral decision overruling the Application. This opinion sets forth the Court's decision in greater detail.

## II. Jurisdictional Issue

The threshold issue is whether the Court has the authority to grant the relief requested. Defendants note that the Norris-LaGuardia Act prohibits courts from issuing restraining orders and injunctions "in a case involving or growing out of a labor dispute." 29 U.S.C. § 101. "The term 'labor dispute' includes any controversy concerning terms or conditions of employment . . . regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). "A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein . . ." 29 U.S.C. § 113(a).

In this case, a labor dispute clearly exists between Heidelberg and the Teamsters. That labor dispute prompted the Teamsters to place advertisements on the billboards in question. In turn, the Teamsters' actions gave rise to Plaintiff's claims. Because Heidelberg, through its union employees, distributes Plaintiff's products, any labor dispute between Heidelberg and the Teamsters has the potential to adversely affect Anheuser-Busch. Regardless of whether the parties to this suit are deemed to be "engaged in the same industry," Anheuser-Busch has a

4

"direct or indirect interest[] therein."  The Court therefore concludes that this is a "case involving or growing out of a labor dispute."

Moreover, Plaintiff seeks to enjoin activity that is specifically protected by statute.  The Norris-LaGuardia Act states, in relevant part:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing . . . any of the following acts: . . .
>
> (e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by *advertising*, speaking, patrolling, or by any other method not involving fraud or violence."

29 U.S.C. § 104 (emphasis added).  Through advertising, Defendants have publicized "the existence of, or the facts involved in" their labor dispute with Heidelberg.  By statute, this activity may not be enjoined.

The fact that Plaintiff is not a party to the labor dispute between Heidelberg and the Teamsters is of little significance.  Courts have interpreted the anti-injunction provision very broadly.  *See Burlington Northern R.R. Co. v. Brotherhood of Maintenance of Way Employes*, 481 U.S. 429, 453 (1987) (holding that court lacked jurisdiction to issue injunction prohibiting secondary picketing against railroads not involved in the labor dispute); *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n*, 457 U.S. 702, 711-12 (1982) (holding that Norris-LaGuardia Act applied even though the strike by union members was politically motivated).

5

For these reasons, the Court concludes that the anti-injunction provision of the Norris-LaGuardia Act, 29 U.S.C. § 101, prohibits the Court from issuing the requested injunctive relief.

## III. Standard for Granting Temporary Restraining Order

Even if it had authority to issue an injunction, the Court would nevertheless overrule Plaintiff's Application. In determining whether a temporary restraining order or a preliminary injunction should be granted, the Court must consider and balance the following four factors: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quotation omitted). In this case, Plaintiff cannot show a substantial likelihood of success on the merits of any of its claims.

### A. Trademark Dilution

Count 1 of Plaintiff's Verified Complaint alleges trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c)(1). The statute states:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name *in commerce* that is likely to cause . . . dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

6

15 U.S.C. § 1125(c)(1) (emphasis added).

In this case, Defendants have not used the Budweiser trademark "in commerce." The term "use in commerce" is defined as "use of a mark in the ordinary course of trade," *i.e.*, in connection with the sale of goods or services. 15 U.S.C. § 1127. Defendants are not attempting to sell goods or services; rather, they are protesting Heidelberg's labor policies. Under these circumstances, Defendants cannot be found to have used the trademark "in commerce," as required under the Lanham Act. *See WHS Entertainment Ventures v. United Paperworkers Int'l Union*, 997 F. Supp. 946, 949 (M.D. Tenn. 1998) (holding that the union did not use a restaurant's trademark "in commerce" when it circulated flyers during a labor dispute).

Moreover, "dilution by tarnishment" is specifically defined by statute as "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). In this case, there is no second mark with which to compare Budweiser's trademark. Therefore, by definition, there can be no "dilution by tarnishment."

Finally, Defendants' conduct is not actionable because it falls within the exclusions set forth in the trademark dilution statute. The statute protects "fair use" of a famous mark, including use in connection with "identifying and parodying, criticizing, or commenting upon the famous mark owner . . . " 15

7

U.S.C. § 1125(c)(3)(A)(ii), and "[a]ny noncommercial use of a mark," 15 U.S.C. §

1125(c)(3)(C). Both exclusions apply in this case.

For all of these reasons, Plaintiff cannot show a substantial likelihood of

success on the merits of its trademark dilution claim.

### B. False Advertising

Count 2 of Plaintiff's Verified Complaint alleges that Defendants have "made

false or misleading statements of fact" concerning Anheuser-Busch's products and

commercial activities and have made such statements in interstate commerce," in

violation of the false advertising portion of the Lanham Act. Verified Compl. ¶ 51.

The relevant statute reads, in relevant part, as follows:

> Any person who, on or *in connection with any goods or services*, or
> any container for goods, *uses in commerce* any word, term, name,
> symbol, or device, or any combination thereof, or any false
> designation of origin, false or misleading description of fact, or false or
> misleading representation of fact, which– . . .
>
> > (B) in *commercial advertising or promotion*, misrepresents the
> > nature, characteristics, qualities, or geographic origin of his or her
> > or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or
> she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added). As discussed above, Defendants'

statements are not used "in commerce" or in connection with any goods or

services.

Moreover, the Court fails to find any false or misleading statements of fact

on the billboard. Plaintiff alleges that the billboard indicates that "Anheuser-Busch

8

is responsible for and involved with a labor dispute with the Teamsters in Ohio, and that Anheuser-Busch is responsible for the 'destruction of Ohio jobs." Verified Compl. ¶ 33. Contrary to Plaintiff's allegations, the advertisement expressly states that *Heidelberg* is responsible for the destruction of Ohio jobs, and that the advertisement was "[p]aid for by the International Brotherhood of Teamsters to address an ongoing labor dispute with Heidelberg Distributing Company."

Therefore, Plaintiff cannot establish a substantial likelihood of success on the merits of its false advertising claim.

### C. Defamation

Count 3 of the Verified Complaint alleges defamation under Ohio common law. Plaintiff maintains that Defendants made "false and defamatory statements concerning Anheuser-Bush and its products on the digital billboard." Verified Compl. ¶ 56.

To succeed on its claim, Plaintiff must show: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962 (Ohio Ct. App. 1992).

9

Plaintiff contends that Defendants' statements constitute defamation per se. Verified Compl. ¶ 60. Defamation per se exists when a statement is defamatory on its face. In contrast, defamation per quod exists when a statement is capable of being interpreted as defamatory. With defamation per se, damages are presumed and need not be specifically pled or proved. *Thomas H. Maloney & Sons, Inc. v. E.W. Scripps Co.*, 43 Ohio App.2d 105, 107-08, 334 N.E.2d 494, 497 (Ohio Ct. App. 1974).

As discussed earlier, the Court finds no false statement in the billboard advertisement. Contrary to Plaintiff's allegations, the advertisement does not state that Budweiser is responsible for the destruction of Ohio jobs or that Budweiser is involved in the labor dispute between Heidelberg and the Teamsters. Because Plaintiff cannot show that Defendants made a "false and defamatory statement concerning another," Plaintiff cannot show a substantial likelihood of success on the merits on its defamation claim.

### D. Ohio Deceptive Trade Practices Act

Count 4 of the Verified Complaint alleges a violation of Ohio's Deceptive Trade Practices Act, Ohio Revised Code § 4165.01, and states that it is related to the Lanham Act claims. Again, Plaintiff alleges that Defendants made false and misleading statements in the billboard advertisements. Verified Compl. ¶¶ 62-63.

Because Ohio's Deceptive Trade Practices Act is substantially similar to the Lanham Act, the claims are often analyzed together. *See Clark v. Walt Disney Co.*,

10

642 F. Supp.2d 775, 784-85 (S.D. Ohio 2009).  For the same reasons set forth in subsection III(B) of this decision, the Court finds that Plaintiff cannot establish a substantial likelihood of success on the merits of its Deceptive Trade Practices Act claim.

In short, Plaintiff has not shown that it is likely to succeed on the merits of any one of its four claims.  Therefore, there is no reason for the Court to address the other factors in deciding whether to issue the requested injunctive relief.  Plaintiff has not satisfied its burden of showing that injunctive relief is warranted.

## IV. Conclusion

Because this case arises out of a labor dispute, the Norris-LaGuardia Act prohibits the Court from issuing the requested injunctive relief.  In addition, because Plaintiff cannot establish a likelihood of success on the merits of any of its claims, there is no basis for the Court to grant the requested relief, even were the Court to have the subject matter jurisdiction to issue same.  For these reasons, the Court OVERRULES Plaintiff's Application For a Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue.  Doc. #5.

This case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date:  August 30, 2011

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE

Copies to:  Counsel of Record

11